UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FARRELL FRICKEY ET AL.                          CIVIL ACTION

VERSUS                                          NO. 14-2

KOBELCO STEWART                                 SECTION "I" (2)
BOLLING, INC. ET AL.

## ORDER ON MOTION

The court previously deferred the motion of Dow Chemical Company (a dismissed defendant) and defendant Union Carbide Corporation (collectively "Dow") to quash the subpoena duces tecum served on Dow Chemical Company by defendant Kobe Steel, Ltd. Record Doc. Nos. 55. As ordered, Dow submitted to me for in camera review the subject "Root Cause Investigation" report. Dow and Kobe filed supplemental memoranda. Record Doc. Nos. 60, 61. Having considered the submissions and arguments of the parties, IT IS ORDERED that the motion is DENIED for the following reasons.

Union Carbide is a wholly owned subsidiary of former defendant Dow Chemical Company. Farrell Frickey was badly burned while working for a contractor at Union Carbide's facility in Taft, Louisiana. Kobe manufactured the equipment that allegedly caused Frickey's injuries. Frickey brought the instant action in Louisiana state court alleging claims under Louisiana tort law. After defendants removed the matter to this court based on diversity jurisdiction, Union Carbide filed cross-claims and counterclaims that also arise under Louisiana law.

In opposing Kobe's subpoena for the Root Cause Investigation report, Dow argues that the report is protected from discovery by the attorney-client privilege. Dow does not contend that the report is work product protected by Fed. R. Civ. P. 26(b)(3), but argues only that the report is privileged under Louisiana Code of Evidence article 506. Louisiana evidence law governs privilege questions in this action brought under Louisiana substantive law. Fed. R. Evid. 501; Exxon Mobil Corp. v. Hill, 751 F.3d 379, 381 (5th Cir. 2014); Int'l Ins. Co. v. RSR Corp., 426 F.3d 281, 299 n.26 (5th Cir. 2005).

Dow has submitted the affidavit of Karen Eddlemon, Lead Counsel for Dow Chemical Company's Louisiana operations, in support of its motion. Record Doc. No. 60-1. Eddlemon provides legal services to Union Carbide pursuant to a master services agreement between Union Carbide and Dow Chemical Company. She states that Root Cause Investigations are "internal investigations of events, problems, and occurrences" that "are performed for many reasons, including to determine the root cause of a problem reported by a customer, a near-miss event, and following major events or–as in the above-captioned case–severe injuries where litigation is anticipated." Id. at ¶¶ 8-9. She admits that Root Cause Investigations "are standard business practice" for "run-of-the-mill matters that occur during the day-to-day operation of facilities" and asserts that such standard investigations "are not typically managed by counsel because litigation is not anticipated." Id. at ¶ 10.

However, according to Eddlemon, "when severe injuries or events occur, onsite personnel contact Dow and Union Carbide's internal legal counsel ('Dow Legal'), as soon as possible, and [she] (or an attorney under [her] direction) will travel to the site to determine whether litigation is a possibility." Id. at ¶ 11.  If the attorney "determines [that] litigation is likely, Dow Legal coordinates and manages the investigation" and follows certain confidentiality protocols that Eddlemon describes in paragraph 12 of her affidavit, which "are diligently followed to preserve Dow and Union Carbide's privilege in light of expected litigation." Id. at ¶¶ 12, 13.

Eddlemon avers that she was notified "shortly after" Frickey was burned.  She traveled to the facility to learn the details of the accident.  She says she determined that litigation was likely to occur based on those details, the severity of Frickey's injuries and "her experience with incidents of this sort." Id. at ¶ 15.  She states that the protocols described in paragraph 12 were implemented and the Root Cause Investigation at issue was performed in accordance with them.  Information about the incident was collected, reviewed, analyzed and reduced to a PowerPoint presentation, id. at ¶ 21, which is the 18-page document that I have reviewed in camera.  Bates Nos. UCC/Frickey In Camera Review 000001-000018.

Eddlemon states that she and Dow Legal were involved in all phases of the investigation and that she "supervised meetings, oversaw the investigative process, approved written documents, and in sum, oversaw preparation of the conclusions set

forth in the" Root Cause Investigation report at issue.  Id. at ¶ 22.  She avers that the investigation was "closed to third parties" and that "complete confidentiality was maintained throughout" it.  Id. at ¶¶ 23-24.  She states that the Root Cause Investigation "Report and legal conclusions regarding the cause of the September 13, 2012 accident were prepared and ultimately relied upon by Dow and Union Carbide management and Dow Legal to respond to the incident, make recommendations, prepare the matter for trial, and in general, perform the regular functions of legal counsel."  Id. at ¶ 25.

Finally, Eddlemon avers that the Root Cause Investigation "was performed in order to determine what legal position and actions were necessary to protect Dow and Union Carbide's interests.  The conclusions and evaluation made by Dow and Union Carbide's counsel have provided the basis for [their] legal position in the above-captioned litigation."  Id. at ¶¶ 26-27.

Dow, as the party resisting discovery by asserting a privilege, bears the burden of proof sufficient to substantiate its privilege claims and cannot rely merely on a blanket assertion of privilege.  United States v. Newell, 315 F.3d 510, 525 (5th Cir. 2002); In re Santa Fe Int'l Corp., 272 F.3d 705, 710 (5th Cir. 2001).

Louisiana's Code of Evidence defines the attorney-client privilege as follows.

A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the

like, of the mental, emotional, or physical condition of the client in connection with such a communication, when the communication is:
(1)  Between the client or a representative of the client and the client's lawyer or a representative of the lawyer.

La. Code Evid. art. 506(B) (emphasis added).

"This Article, however, does not include 'any information [that the lawyer] may have gotten by reason of his being such legal adviser.'" Id. official comment (i), 1992 revisions.  Thus, "it is axiomatic that the attorney-client privilege only protects disclosure of confidential communications between the client and his attorney; it does not protect underlying facts." Consol. Health Plans, Inc. v. Principal Performance Group, Inc., No. 02-1230, 2003 WL 1193663, at *5 (E.D. La. Mar. 14, 2003) (citing United States v. Edwards, 39 F. Supp. 2d 716, 735 (M.D. La. 1999); Boyd v. St. Paul Fire & Marine Ins. Co., 775 So. 2d 649, 655 (La. App. 3d Cir. 2000)) (quotation omitted); accord Succ'n of Smith v. Kavanaugh, Pierson & Talley, 513 So. 2d 1138, 1150 (La. 1987).

Acknowledging this well-established principle, Dow states in its supplemental memorandum that it has produced in response to the subpoena all witness statements and documents containing factual information that were collected by the Root Cause Investigation team.  Record Doc. No. 60 at p. 2.  Kobe argues in its reply memorandum that Dow may not have produced all such documents and asks that Dow be ordered to produce them.  Record Doc. No. 61 at p. 2.  The court declines to address this request.

5

If Kobe has grounds for a motion to compel additional production, it may file a motion that complies with the applicable Federal Rules of Civil Procedure and Local Rules.

Dow argues that the conclusions reached by the Root Cause Investigation team set forth in the Root Cause Investigation report are subject to the attorney-client privilege and need not be produced in response to the subpoena.

> To establish the attorney-client privilege, several elements must be proven by the party asserting the privilege: 1) the holder of the privilege is or sought to become a client; 2) the communication was made to an attorney or his subordinate in a professional capacity; 3) the communication was made outside the presence of strangers; 4) the communication was made for the purpose of obtaining a legal opinion or services; and 5) the privilege has not been waived.

Maldonado v. Kiewit La. Co., 152 So. 3d 909, 927 (La. App. 1st Cir. 2014) (citing In re Shell Oil Ref., 812 F. Supp. 658, 661 (E.D. La. 1993); Cacamo v. Liberty Mut. Fire Ins. Co., 798 So. 2d 1210, 1216 (La. App. 4th Cir. 2001)) (emphasis added). Federal common law and Louisiana statutory law are materially similar concerning the attorney-client privilege. Hodges, Grant & Kaufman v. United States, 768 F.2d 719, 720-21 (5th Cir. 1985); Soriano v. Treasure Chest Casino, Inc., No. 95-3945, 1996 WL 736962, at *2 (E.D. La. Dec. 23, 1996).

"A corporate client has a privilege to refuse to disclose, and prevent its attorneys from disclosing, confidential communications between its representatives and its attorneys when the communications were made to obtain legal services." Nguyen v. Excel Corp., 197 F.3d 200, 206 (5th Cir. 1999). In a corporate setting, "communications

from lower echelon employees [are] within the privilege as long as the communications were made to the attorney to assist him in giving legal advice to the client corporation." United States v. El Paso Co., 682 F.2d 530, 538 n.8 (5th Cir. 1982) (citing Upjohn Co. v. United States, 449 U.S. 383, 391-92 (1981)).

The only disputed issue is whether Dow has met its burden to prove that the subject communication was made for the purpose of obtaining a legal opinion or services, since Eddlemon's affidavit adequately establishes the other four elements of the privilege described in Maldonado. Communications with attorneys made for purposes other than giving or obtaining an opinion on the law or legal services are not shielded by attorney-client privilege. La. Code Evid. art. 506(B); Soriano, 1996 WL 736962, at *2; In re Shell Oil Ref., 812 F. Supp. at 661; State v. Montgomery, 499 So. 2d 709, 712-13 (La. App. 3d Cir. 1986); accord United States v. Bornstein, 977 F.2d 112, 116-17 (4th Cir. 1992) (citing United States v. Davis, 636 F.2d 1028, 1043 (5th Cir. 1981)); In re Grand Jury Subpoena, 831 F.2d 225, 227-28 (11th Cir. 1987) (citing Davis, 636 F.2d at 1044). In addition, "[d]ocuments and materials developed by a lawyer for use in or in anticipation of litigation are not protected by the attorney-client privilege." Hodges, Grant & Kaufman v. United States, 768 F.2d 719, 721 (5th Cir. 1985)) (emphasis added).

"[W]hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer." El Paso Co., 682 F.2d at 538 (quotation omitted); accord Montgomery, 499 So. 2d at 712. As the Fifth Circuit has

stated, "[c]ontext here is key," and resolution of privilege questions turns on the facts and evidence in a particular case.  Exxon Mobil Corp., 751 F.3d at 382.

Kobe avers in its original opposition to Dow's motion, and Dow does not dispute in its supplemental memorandum, that the Root Cause Investigation and report are the only investigation and report that Dow undertook regarding the accident.  Eddlemon's affidavit and the undated Root Cause Investigation report establish that she was a member of a 10-person team that was convened "shortly after" the accident to investigate its root causes, take immediate corrective actions and recommend actions to increase safety and prevent similar accidents in the future.  Eddlemon was the only person from Dow's Legal Department on the investigative team.  Dow has not identified the other team members for the court.  Based on their partial titles in the report, all appear to be technical and safety personnel.  Bates No. UCC/Frickey In Camera Review 000003.[1]

Every page of the Root Cause Investigation report is marked "attorney-client privileged."  The second page states that the report is an attorney-client communication that was prepared for the purpose of obtaining legal advice and notifies recipients that they may not disseminate it without permission from Dow Legal or Eddlemon.  Bates No. UCC/Frickey In Camera Review 000002.  The report contains no other references to law, legal advice or litigation.  It includes factual analyses of the root causes that led

---

[1]The entire report, including this page, contains numerous abbreviations that Dow has not explained to the court.

8

to the accident and action items to address the identified causes.  None of the action items are assigned to Eddlemon.  The final page summarizes what has been learned and makes a few recommendations for what appear to be longer term actions.[2]

I find that Eddlemon's affidavit and the Root Cause Investigation report contain only conclusory and self-serving allegations about attorney-client privilege.  Viewed in light of the overall content of the report, these allegations fail to carry Dow's burden to prove that the report was not prepared in the ordinary course of business of investigating an accident.

In addition, Dow admitted that Root Cause Investigations "are standard business practice" for "run-of-the-mill matters that occur during the day-to-day operation of facilities," although Dow states that these investigations are not typically managed by counsel.  Dow tries to distinguish the subject Root Cause Investigation from "run-of-the-mill matters," based on Eddlemon's participation on the investigative team.  However, the evidence shows that Root Cause Investigations of serious matters in general and of this particular case, leading to a single – and the only – analytical report to determine the root causes of an event and implement appropriate remedial measures, are just as much Dow's standard business practice as investigations of more mundane incidents.  Eddlemon's professed anticipation of litigation, her participation on the team and Dow's policy of keeping the investigation confidential cannot convert a factual report prepared

---

[2]The court is again hampered by not knowing the meaning of some of the abbreviations used.

in the ordinary course of business into attorney-client privileged material.  Dow cannot convert what is standard business practice performed for a variety of non-legal purposes into privileged material through the simple expedient measure of adding a lawyer into the mix.  Dow has failed to show that the report refers to legal, rather than business or technical, advice and recommendations.  La. Code Evid. art. 506(B); In re Grand Jury Subpoena, 831 F.2d at 227-28; Hodges, Grant & Kaufman, 768 F.2d at 721; Chevron Midstream Pipelines LLC v. Settoon Towing LLC, No. 13-2809, 2015 WL 65357, at *5 (E.D. La. Jan. 5, 2015); EPCO Carbondioxide Prods., Inc. v. St. Paul Travelers Ins. Co., No. 06-1800, 2007 WL 4560363, at *2 (W.D. La. Dec 21, 2007); Brookshire Bros. Holding, Inc. v. Total Containment, Inc., 2:04-CV-1150, 2006 WL 845731, at *2 (W.D. La. Mar. 30, 2006); see also Wright v. Life Investors Ins. Co., No. 2:08-CV-03-P-A, 2009 WL 4347024, at *2 (N.D. Miss. Nov. 24, 2009) (citing Fisher v. United States, 425 U.S. 391, 403 (1976); McCaugherty v. Sifferman, 132 F.R.D. 234, 238 (N.D. Cal. 1990); Haynes v. Anderson, 597 So. 2d 615, 621 (Miss. 1992)) (Under Miss. R. Evid. 502, which mirrors La. Code Evid. art. 506, "[t]he privilege cannot extend to those disclosures which were made for business purposes, whether or not anyone had an interest in legal advice."); compare Exxon Mobil Corp. v. Hill, 751 F.3d 379, 382 (5th Cir. 2014) (footnote omitted) ("[T]his record is devoid of any indication that [in-house counsel] Stein was providing business advice divorced from its legal implications [during contract negotiations].  Especially when viewed in context, the Stein Memo cannot be mistaken

for anything other than legal advice."  The Stein memorandum "included elaborate language disclaiming liability . . . and disclaiming any warranty as to the accuracy of the test results.  The manifest purpose of the draft was to deal with what would be the obvious reason Exxon Mobil would seek its lawyer's advice in the first place, namely to deal with any legal liability that may stem from under-disclosure of data, hedged against any liability that may occur from any implied warranties during complex negotiations.").

Accordingly, IT IS ORDERED that, no later than March 9, 2015, Dow must produce the Root Cause Investigation report in response to Kobe's subpoena.

New Orleans, Louisiana, this _____5th_____ day of March, 2015.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE